CAIN, PROSECUTING ATTORNEY, *v* CALHOUN, JUDGE.

[Cite as Cain v. Calhoun (1979), 61 Ohio App. 2d 240.]

(No. 79CA3—Decided June 5, 1979.)

*Mr. Joseph L. Cain,* prosecuting attorney, for himself.
*Mr. Ronald R. Calhoun,* for himself.

STEPHENSON, P. J.  This is an original action in prohibition and is before the court on a motion by relator for a judgment on the pleadings. On March 6, 1979, Joseph L. Cain, as prosecuting attorney of Gallia County, filed a complaint in

this court seeking the issuance of a writ of prohibition against Ronald R. Calhoun, judge of the Gallia County Court of Common Pleas, to prevent the appointment of William N. Eachus as counsel for an indigent criminal defendant. The complaint averred, in substance, that one Forrest Jones is an indigent defendant in a criminal matter before the Gallia County Court of Common Pleas; that respondent, Ronald L. Calhoun, judge of such court, is attempting to appoint William N. Eachus as defense counsel; and that the Gallipolis Municipal Court has county-wide jurisdiction in Gallia County. It is further averred that the attorney is the City Solicitor for Gallipolis, Ohio, and that by reason of R.C. 120.39 and R.C. 1901.34 such appointment is unauthorized by law.

Respondent answered and admitted the status of attorney Eachus as City Solicitor of Gallipolis and further averred that he had been selected by Forrest Jones, who had been secretly indicted for aggravated murder, and that no proceedings were conducted in the Municipal Court with respect to such offense. Other averments were made respecting County Court judges and village solicitors representing criminal defendants, either as appointed or retained counsel, in the Gallia County Court of Common Pleas. A cross-complaint was filed by respondent, which, in effect, seeks to have this court consider "whether or not a judge, county prosecutor, city solicitor, village solicitor or similar officer is prohibited from representing criminal defendants." An answer to the cross-complaint was filed by relator, wherein the representation of criminal defendants by attorneys holding public offices was, for want of knowledge, denied.[1]

The prerequisites for the issuance of a writ of prohibition are set forth in the first paragraph of the syllabus in

---

[1] It is a fundamental and long standing principle in Ohio that a court may decide only actual controversies presented between adverse litigants. *Stewart* v. *Southard* (1848), 17 Ohio 402; *Hughes* v. *Bd. of Revision* (1944), 143 Ohio St. 559, 14 Ohio Jurisprudence 2d 626, Courts, Section 196. With regard to the right of Public officials, generally, to represent clients in court, relator has placed himself in the position of both relator and respondent. In short, an advisory opinion is sought which this court is without authority to grant. We consider, therefore, only the actual controversy presented by the pleadings respecting the appointment of attorney Eachus.

*State, ex rel. McKee,* v *Cooper* (1974), 40 Ohio St. 2d 65, which reads as follows:

"The conditions which must exist to support the issuance of a writ of prohibition are: (1) The court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy in the ordinary course of the law. *(State, ex rel. Lehmann,* v. *Cmich,* 23 Ohio St. 2d 11, followed)."[2]

No contention is made, nor could a valid contention be made, in our view, that the appointment of counsel for an indigent defendant is other than the exercise of judicial power. Clearly, it is in no sense a mere ministerial duty inasmuch as the questions of whether a defendant is entitled to appointed counsel and, if so, whether a particular person should be appointed require both a factual determination and the exercise of discretion. See *State* v. *Tymcio* (1975), 42 Ohio St. 2d 39. It is the exercise of a function mandated both constitutionally and statutorily and one that only a court can perform.

Neither do we perceive any impediment to prohibition relief by reason of the existence of an adequate remedy at law. Such relief would necessarily be in the same court in which the appointment would be made and the payment of counsel authorized. Thus, it would, in effect, constitute a collateral attack upon the order of appointment and the payment. Likewise, no remedy by way of an appeal, in which the relator could attack the appointment, exists either by statute or rule. Cf. *State, ex rel. McKee,* v. *Cooper, supra.*

---

[2] It is also necessary that a party have standing to invoke the jurisdiction of the court. *The State, ex rel Dallman,* v. *Court of Common Pleas* (1973) 35 Ohio St. 2d 176. Although the issue has not been raised by respondent, we *sua sponte* find that relator has such standing by virtue of R.C. 309.12, which provides in part: "Upon being satisfied that funds of the county, or public moneys in the hands of the county treasurer or belonging to the county, are about to be or have been misapplied * * * the prosecuting attorney may, by civil action in the name of the state, apply to a court of competent jurisdiction, to restrain such contemplated misapplication of funds * * * ." Since appointed counsel is entitled to be paid a fee for his services from county funds pursuant to R.C. 120.33, the appointment and payment of counsel not authorized by law would result in county funds being "misapplied" and, therefore, provide a basis for an action instituted by the prosecuting attorney.

The pivotal question that remains is whether the attempted appointment by respondent is unauthorized and contrary to law. Relator, for his authority, places primary reliance upon the reasoning and conclusion in 1978 Ohio Atty. Gen. Op. 2-62, No. 78-026 (Adv.), the syllabus of which provides:

"R.C. 120.39 prohibits a village solicitor (appointed pursuant to R.C. 733.48) and members of his office, his partners, and his employees from being appointed as counsel to represent an indigent criminal defendant under R.C. Chapter 120."

While we are not here concerned with a village solicitor, the rationale of the opinion is pertinent. The relevant part is the following:

" * * * [T]he apparent purpose of R.C. 120.39 is to avoid problems that might arise when a lawyer represents both the state and defendants in original prosecutions. In that respect there appears to be no logical reason to differentiate between city law directors and village solicitors. Both have the duty to prosecute violations of state statutes. *Since R.C. 120.39 prohibits a city law director from representing any indigent defendants,* it would be anomalous to conclude that no such prohibition applies to village solicitors although they have the same duties." (Page 2-64.) (Emphasis added.)

R.C. 120.39 reads as follows:

"(A) Counsel appointed by the court, co-counsel appointed to assist the state public defender or a county or joint county public defender, and any public defender, county public defender, or joint county defender, or member of their offices, shall not be a partner nor employee of any prosecuting attorney nor of any city director of law, or similar officer.

"(B) No prosecuting attorney, city director of law or similar officer or their assistants and employees, and no judge or court employee shall serve on the state public defender commission, or any county or joint county public defender commission."

Such section apparently has its origin in R.C. 2941.50, now repealed, which provided with respect to assigned counsel for indicted indigent defendants that "[s]uch counsel shall not be a partner in the practice of law of the attorney having charge of the prosecution."

In *Gulf Oil Corp.* v. *Kosydar* (1975), 44 Ohio St. 2d 208, 215, the court stated the following with respect to the court's duty in construing legislative enactments:

"In *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101, 105, we stated that 'it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. See, *e.g., Katz* v. *Department of Liquor Control* (1957), 166 Ohio St. 229. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly. *Sears* v. *Weimer* (1944), 143 Ohio St. 312.'

"In *State, ex rel. Francis,* v. *Sours* (1944), 143 Ohio St. 120, 124, it was stated that 'the polestar of construction and interpretation of statutory language is legislative intention. In determining that intention courts look to language employed and to the purpose to be accomplished.' Accord, *Henry* v. *Central National Bank* (1968), 16 Ohio St. 2d 16, 20.

"The above principle of construction was stated negatively in *Carmelite Sisters, St. Rita's Home,* v. *Bd. of Review* (1969), 18 Ohio St. 2d 41, 46, as follows: 'the legislative intent may be inquired into only if the enactment is ambiguous upon its face.' "

Applying this criteria to R.C. 120.39, the intent, meaning and purpose is clearly and unequivocally manifested. The phraseology "[c]ounsel appointed by the court * * * shall not be a *partner nor employee* of any prosecuting attorney nor of any city director of law, or similar office" was intended to and proscribes only the appointment of such partner or employee of the enumerated officers. It does not proscribe expressly, or by implication, the appointment of the enumerated officers themselves and we, therefore, disagree with the opinion of the Attorney General concluding otherwise. It necessarily follows that if the General Assembly intended to restrict the appointment of such officers by the court to represent indigent defendants, it must appear elsewhere.

A logical and forceful reason exists why the General Assembly did not proscribe the appointment of such officers in R. C. 120.39; it had already dealt with the duties pros-

ecuting attorneys and city solicitors have to represent the state in criminal prosecutions. R. C. 309.08 provides: "The prosecuting attorney***shall prosecute, on behalf of the state, all complaints***in which the state is a party***." R. C. 1901.34 provides, in the part pertinent, the following:

"***[The] city director of law for each municipal corporation within the territory shall prosecute all criminal cases brought before the municipal court for violations of the ordinances of the municipal corporation for which he is solicitor or director of law, or for violation of state statutes or other criminal offenses occurring within the municipal corporation for which he is a solicitor or director of law,***. The director of law of the city in which the court is located shall prosecute all criminal cases brought before the court arising in the unincorporated areas within the territory***. The city director of law shall perform the same duties, as far as they are applicable thereto, as are required of the prosecuting attorney of the county."

It necessarily follows from the above that Mr. Eachus is required to prosecute, pursuant to R. C. 1901.02, all cases in the Gallipolis Municipal Court, the jurisdiction of which is county-wide, irrespective of whether the offenses occurred in or out of the municipality. Inasmuch as the duties of a city attorney for a municipal corporation are the same as those of all prosecuting attorneys, as far as such are applicable, it follows that the General Assembly intended a city attorney to represent only the state in criminal prosecutions. See 1966 Ohio Atty. Gen. Op. 2-335, No. 66-159 (Adv.), wherein it was concluded, on like reasoning, that "[a] city solicitor may not represent defendants in a criminal case wherein the State of Ohio is plaintiff." So viewed, the omission in R. C. 120.39 of the enumerated officers was not a legislative oversight, but rather was a recognition that, because of the prosecutorial duties imposed by law, such persons were already disqualified from representing criminal defendants, either in Municipal or Common Pleas Courts.[3]

---

[3] It is reasonable to assume that many, if not most, felony prosecutions are commenced by the filing of a complaint in the Municipal or County Court. The city solicitor, functioning as prosecutor, must necessarily be informed as to the nature of the state's evidence. Thus, our conclusion is that the General Assembly intended that such official not represent such defendant in further proceedings in the Com-

We recognize that R. C. 120.33 provides, with respect to a county appointed counsel system, the following:

"(A) In such a county, an indigent person shall have the right to do either of the following:

"(1) *To select his own personal counsel to represent him in any proceeding* included within the provisions of the resolution;

"(2) To request the court to appoint counsel to represent him in such a proceeding.

"(B) *The court* having jurisdiction over the proceeding *shall,* after determining that the person is indigent and entitled to legal representation under this section, do either of the following:

"(1) By signed journal entry recorded on its docket, *enter the name of the lawyer selected by the indigent person as counsel of record;*

"(2) Appoint counsel for the indigent person if the person has requested the court to appoint counsel and, by signed journal entry recorded on its dockets, enter the name of the lawyer appointed for the indigent person as counsel of record." (Emphasis added.)

Focusing solely upon this statute, it would appear that a defendant has an unrestricted choice as to counsel. It is apparent, however, that the General Assembly did not intend to confer an unlimited right of choice of counsel. The proscription in R. C. 120.39, which was enacted at the same time as R. C. 120.33, relating to the same subject matter, is necessarily in *pari materia* with R. C. 120.33 and is an obvious limitation upon such right. We conclude, therefore, that the right to choose counsel necessarily extends only to attorneys not otherwise disqualified by law.

While the legislative intent is not as clearly manifested with an express disqualification as that which appears to those persons enumerated in R. C. 120.39, we conclude that the prosecuting attorney and city solicitor are likewise disqualified for the reasons hereinbefore enumerated.

The General Assembly is presumed to act with full knowledge of all pertinent statutes at the time a new statute

mon Pleas Court. The fortuitous circumstance, therefore, that in this case Jones was indicted directly by the Grand Jury is not controlling, absent any legislative manifestation that such an exception was intended.

is enacted. *State, ex rel. Pugh,* v. *Brewster* (1886), 44 Ohio St. 249. At the time of the enactment of R. C. Chapter 120, R. C. 1901.34 was in force. We hold that such section is also in *pari materia* with R. C. 120.33 because of its relationship with the same subject matter, *i.e.,* the designation of counsel in criminal proceedings brought in the name of the state.

Accordingly, since the respondent is exercising a power of appointment not authorized by law, the motion for a judgment on the pleadings and the writ of prohibition are granted.

*Writ granted.*

ABELE and GREY, JJ., concur.